OPINION
{¶ 1} On October 31, 2001, appellee, the Stark County Department of Jobs and Family Services, filed a complaint alleging Anthony Mastache born July 23, 1998, Erica Mastache born July 2, 1999 and Steven Mastache born March 1, 2001, to be dependent, neglected and abused children. Mother of the children is appellant, Christie Mastache. Father is Fransisco Mastache.
 {¶ 2} On January 8, 2002, appellant began serving a three year prison term for child endangering involving Steven. On January 24, 2002, the trial court found Steven to be an abused child, and Anthony and Erica to be dependent. Temporary custody of the children was granted to appellee.
 {¶ 3} On July 5, 2002, appellee filed a motion for permanent custody. A hearing was held on September 16, 2002. By judgment entry filed October 2, 2002, the trial court granted the motion and awarded appellee permanent custody of the children. Findings of fact and conclusions of law were filed on same date.
 {¶ 4} Appellant filed an appeal and this matter is now before this court for consideration. Assignment of error is as follows:
 I {¶ 5} "The trial court's decision to grant permanent custody to the Mastache children to the Stark County Department of Job and Family Services is against the manifest weight of the evidence."
 I {¶ 6} Appellant claims the trial court's award of permanent custody to appellee was against the manifest weight of the evidence. We disagree.
 {¶ 7} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. Cross Truck v. Jeffries (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction (1978), 54 Ohio St.2d 279.
 {¶ 8} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:
 {¶ 9} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 10} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 11} "(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;
 {¶ 12} "(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section2903.16, 2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05,2907.07, 2907.08, 2907.09, 2907.12, 2907.21, 2907.22, 2907.23, 2907.25,2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11,2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
 {¶ 13} "(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
 {¶ 14} "(15) The parent has committed abuse as described in section 2151.031 of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
 {¶ 15} "(16) Any other factor the court considers relevant."
 {¶ 16} R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child. R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:
 {¶ 17} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 18} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 19} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 20} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 21} "Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 22} Appellant argues she attempted to fulfill the requirements of the case plan, but her incarceration for felony child endangering cut short her completion of the plan. She also argues she was promised judicial release in January 2003.
 {¶ 23} In her brief at 5 and 6, appellant concedes the trial court's October 2, 2002 findings of fact are true statements of the facts of the case. Of crucial importance to the issues raised on appeal is Finding No. 9:
 {¶ 24} "The mother of these children is Christie Mastache. Ms. Mastache was present, with counsel for the trial held on September 16, 2002. She has failed to complete her case plan for reunification, due to her incarceration on a three year prison sentence stemming from a Child Endangering conviction. Ms. Mastache's case plan, and its amendments, included five goals:
 {¶ 25} "1) Ms. Mastache was to obtain a psychological evaluation, and follow all recommendations; 2) Ms. Mastache was to complete a parenting class; 3) Ms. Mastache was to complete drug and alcohol assessment, and to follow all recommendations; 4) Ms. Mastache was to attend counseling; and 5) Ms. Mastache was to obtain and maintain appropriate housing.
 {¶ 26} "Ms. Mastache underwent a psychological evaluation at Human Development. The evaluation noted significant concerns regarding Ms. Mastache's anger problems. As a result, the evaluating psychologist recommended that before returning her children was even considered, she should complete anger management classes; undergo a substance abuse evaluation at QUEST; and complete a parenting class. If she did not successfully complete those items, the psychologist recommended that the SCDJFS be granted permanent custody of the children.
 {¶ 27} "Before Ms. Mastache was sentenced to prison, she did begin attending parenting classes at GoodWill Parenting. However, during the time of her attendance, reports indicate that she was not cooperative, she was often hostile, and frequently used foul language. Her behavior at the classes became so problematic that GoodWill was forced to request her to sign a behavior contract before she was allowed to continue with the program. Ms. Mastache was terminated from GoodWill before completion as a result of her beginning her prison sentence.
 {¶ 28} "Ms. Mastache did complete a substance abuse evaluation through the Hope Program, which referred her to QUEST. No evidence was presented to demonstrate to the Court that she has satisfactorily addressed her serious alcohol problem, which was an initial concern in this case.
 {¶ 29} "Ms. Mastache never complied with the requirement that she undergo counseling.
 {¶ 30} "Due to Ms. Mastache's three year prison term, she has been unable to provide her children with appropriate, stable housing."
 {¶ 31} It is appellant's position that she should be given another opportunity to complete the case plan upon her judicial release. Appellant was denied judicial release once, but claimed the trial court told her attorney she would be granted it in January 2003 if she had no problems and remained in an alcohol and drug program. T. at 20-22. At the time of the hearing, appellant was incarcerated and the conditional assurances of judicial release were not corroborated.
 {¶ 32} Given the facts that appellant admits to failing the Goodwill Parenting Program and not complying with the requirement that she undergo counseling, and was early into a three year prison sentence for child endangering, we are loath to find the trial court erred in concluding reunification could not be accomplished in a reasonable time.[1]
 {¶ 33} As for the issue of best interests, the caseworker testified that although the children were bonded to Mr. Mastache, "they need to be safe and provided for and he's unable to do that" therefore, it would be in the children's best interest to grant permanent custody to appellee. T. at 7-8, 37, 39-40. The foster parents of the children have expressed a desire to adopt the children and have indicated a willingness "to consider father to continue the companionship, the visits." T. at 38. The children are bonded to their respective foster parents and they've shown improvements in their behaviors. T. at 41.
 {¶ 34} We find the evidence to be substantial and credible that it is in the children's best interest to be provided with a safe and stable home environment which can only be available through permanent custody.
 {¶ 35} Upon review, we find the trial court had clear and convincing evidence before it to grant appellee permanent custody of the children.
 {¶ 36} The sole assignment of error is denied.
 {¶ 37} The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, J., Hoffman, P.J. and Wise, J. concur.
Topic: Permanent custody — mother incarcerated for child endangering.
[1] Mr. Mastache is an illegal alien and was once deported for a domestic violence charge. T. at 11-12. He is unable to obtain legal employment, is unable to receive any benefits and has no suitable home for the children. T. at 10-11, 12-13.